1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

| | |
|---|---|
| RODNEY BUTLER,<br><br>        Petitioner,<br><br>   v.<br><br>AUDREY GILL, Warden,<br><br>        Respondent. | Case No. 1:14-cv-00022-BAM  HC<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

15

16

17

18

19

20

21

     Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  He contends that the Bureau of Prisons ("BOP") violated his right to due process by denying him access to a videotape of Unit C-1 Housing or a screen shot of its inmate bulletin board, which Petitioner alleges would reveal that an April 17, 2012 order of Warden P. Copenhaver, on which Petitioner's disciplinary sanctions were partially premised, was never posted.  Petitioner contends that denial of the videotape or a screenshot denied his right to present evidence in a disciplinary hearing.

22

## I.    **Background**

23

24

25

26

     On July 19, 2007, the U.S. District Court for the Eastern District of California sentenced Petitioner to 240 months' imprisonment after he pleaded guilty to conspiracy to possess cocaine with intent to distribute (21 U.S.C. § 846).    At the time of the alleged disciplinary infractions, Petitioner, who remains in the custody of the BOP, was incarcerated at the Federal

27

28

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

Correctional Institution, Mendota, California.  His projected release date is January 31, 2022, with good conduct time.

On April 17, 2012, Warden Paul Copenhaver issued a memorandum for the inmate population, advising them that the Court Security Act had added two provisions: (1) a criminal offense for filing, attempting to file, or conspiring to file a false lien or encumbrance against the real or personal property of a federal judge or federal law enforcement officer (18 U.S.C. § 1521), and (2) making publicly available "restricted personal information" about a "covered person" with the intent to threaten, intimidate, or incite a crime of violence against such person (18 U.S.C. § 119).  "Covered persons," explained the warden, include court officers, jurors, witnesses, informants, and federal law enforcement officers, including BOP employees.  Filing a lien against a "covered person" can constitute a violation of these statutes.  Warden Copenhaver announced that beginning one week from the memorandum's date, all inmates would be prohibited from obtaining, possessing, or creating UCC filing statements.  Inmates would also be prohibited from possessing the personal information of any "covered person" or their immediate family member, including but not limited to home address, home telephone number, social security number, personal email address, or home fax number.  An inmate with a legitimate reason for possessing such information, such as because a "covered person" was his or her relative, was directed to advise unit staff.  Inmates were warned that possession of UCC documents or the personal information of a "covered person" would result in confiscation of the prohibited matter and disciplinary charges.

Incident Report No. 2304325, dated May 15, 2012, charged Petitioner with possession of anything unauthorized (Code 305), use of the mail for abuses other than criminal activity (Code 296), and use of the telephone for abuses other than illegal activity (Code 297).  SIS Technician B. Bragan described the incident:

> On May 15, 2012, at 10:00 a.m. SIS completed review of Inmate Rodney Butler['s] Reg. No. 91084-012 property which contained multiple Uniform Commercial Code forms which inmates are not allowed to possess in accordance with [the] Implementation of Court Security Act.

2

> Inmate Butler sent out a letter on May 1, 2012 to [*redaction*] San Jose, CA 95127. Inside the envelope contained two unauthorized Uniform Commercial Code forms that were filled out by inmate Butler.  Inmate Butler provided a frivolous address of 1623 Darwin Street, Seaside, CA 93955 on the forms as well.  Inmate Butler abused the mail by directing others to send in unauthorized forms for him with a fictitious return address.
>
> Inmate Butler placed a phone call on 5/5/2012 at 4:58 p.m. to phone number 916-710-5825.  During this call inmate Butler asks the individual to download and fill out a Uniform Commercial Code Financing Statement form from SOS.SA.GOV. On May 7, 2012, at 5:25 p.m., Butler also placed a call to this number.  During this call inmate Butler directs the individual how to fill out the Uniform Commercial Code Financing Statement Amendment form using inmate Butler's info.  The content of these calls is prohibited due to the fact that inmate Butler had his outside contact fill out unauthorized Uniform Commercial Code forms using erroneous information, such as incorrect address, and use of Butler's information.

Doc. 15-1 at 34.

Prison staff became aware of Petitioner's actions when the Post Office returned the letter, which had been sent certified, because the intended recipient's address was vacant.  The envelope contained the UCC statements, which sought to vacate Petitioner's driver's license, judgment and commitment, or social security number.  The specified debtor was "John Henry Doe," whose address was "[in] care of: Post Office Box 9999, Los Angeles 90010 California."  Doc. 15-1 at 45.

When contacted by Lt. E. Torres, who investigated the incident, Petitioner stated, "First, 1623 Darwin is not a frivolous address and second, I did not violate any finance statements."  Doc. 15-1 at 35.  The Unit Disciplinary Committee referred the matter to the Disciplinary Hearing Officer, recommending maximum punishment.

DHO J. De Vore heard conducted a disciplinary hearing on May 21, 2012.  Petitioner declined the assistance of a staff representative.

> Butler claimed the memorandum indicating UCC forms were contraband was never posted.  He claimed the UCC form was submitted to delete his Social Security Number and Driver's License number.  He said he did use another address to have correspondence routed through and it was his home.

Doc. 15-1 at 30.

3

The DHO considered the following documentary evidence: the incident report and investigation, Warden Copenhaver's memorandum, the envelope sent by Petitioner, and eight pages of UCC filing statements.  Petitioner requested no witnesses or evidence.  Nothing in the DHO's report indicates that Petitioner requested that Respondent provide him or the DHO with any evidence.

The DHO concluded that Petitioner had committed the three code violations of which he was accused.  The DHO made the following findings and conclusions:

> The DHO relied on the following: The summary of the review of your outgoing correspondence that was conducted on 5-15-2012.  During this review staff found you, Inmate Butler, Reg. No. 91084-012, were sending out a letter through the US Postal Service that contained several Uniform Commercial Code (UCC) forms.  These forms were sent to an individual in the public with the intention of having them forwarded to another address.  Additionally, you provided a return address with your name but not the institution's address where you are currently incarcerated.  A review of your phone records indicated that you had placed a phone call to 916-710-5825 on 5-5-2012.  During the phone call, you had discussed having the individual download and prepare UCC forms.  On 5-7-2012 you placed another call to the same number and instructed the individual to utilize the address of 1623 Darwin on the forms.  A review of the UCC forms indicated that the address of 1623 Darwin was listed as your address in block B "SEND ACKNOWLEDGEMENT TO (NAME AND ADDRESS)."  You utilized the phone to arrange, facilitate and further the abuse of the mail by masking your true address which is "RODNEY BUTLER, Reg. No. 910840012, Unit C, PO Box 9, Mendota, CA 93640."  The UCC forms indicated the information contained on the forms directly related to you yet you used a return address that indicated you were masking your true location to the recipient of the UCC forms.  The UCC forms contained information that you were attempting to have your Judgment and Commitment deleted.  You intentionally used a third party to forward the UCC forms and utilized a false return address in an effort to not allow the recipient and reviewer of the documents to know you were incarcerated.  You used the phone to further that act of misconduct.

> The DHO reviewed the memorandum from the Warden to the inmate population at the facility you were incarcerated.  This memorandum dated 4-17-2012 put the inmate population on notice that the possession of UCC forms was prohibited effective one week from the dated memorandum.  The envelope with the UCC forms was postmarked 5-1-2012, more than one week from the posting of the memorandum.  The DHO took into consideration your claim the memorandum was not distributed to the inmate population, however, the SHU Lieutenant, Lieutenant Marlow, who was present at the hearing examined the memorandum and said the memo was in fact posted for the inmate population on the date the memorandum was dated.  The DHO finds you have received notice that the

4

document was not authorized for retention.  You have an incentive to avoid the consequences of your actions where Lieutenant Marlow had no motive to misrepresent the posting of the memorandum.

The DHO also considered your statement that the UCC form was filled out by you to delete your driver's license and social security numbers.  However, the DHO read the UCC filing and found you were attempting to have your Judgment and Commitment deleted.

The DHO noted that you did not deny or refute the facts contained in section 11 of the incident report regarding the mail, the address used or the phone call.  You claimed you were using your home address as the address you would receive mail.  The DHO read a handwritten note include in the UCC filing envelope you were sending out.  The note was addressed to the Secretary of State of California and requested that the UCC documents be filed and a copy sent to the above address, which was "Rodney Butler, c/o 1623 Darwin Street, Seaside, CA 93955."  Inmates are required to directly correspond with individuals in the community using their inmate institutional address.

Based on the greater weight of the evidence you possessed the UCC forms you had placed in the envelope on 5-1-2012, the DHO finds you had committed the prohibited act of Code 305.

Based on the greater weight of the evidence you utilized a third party address in the community to send and receive mail for you, the DHO finds you committed the prohibited act of Code 296.

Based on the greater weight of the evidence you utilized the phone to facilitate and further the use of a third party to forward your US mail (a violation of Code 296), the DHO finds you committed Code 297, by using the phone to further a high severity act of misconduct.

Doc. 15-1 at 31-32.

For violation of code 297, the DHO sanctioned Petitioner with three months' loss of telephone and disallowed 27 days of good conduct time; for code 296, three months' loss of email and disallowance of 27 days of good conduct time; for code 305, thirty days' disciplinary segregation and three months' loss of commissary items.

On January 6, 2014, Petitioner filed the petition for writ of habeas corpus in this Court.  The parties do not dispute venue, personal service, subject matter jurisdiction, or exhaustion of remedies.

## II.   **Due Process Right to Present Evidence**

Under the Due Process Clause, inmates have a right to call witness and to present evidence in a disciplinary hearing so long as doing so is not "unduly hazardous to institutional safety or correctional goals."   *Ponte v. Real*, 471 U.S. 491, 499 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).   Nonetheless, determining an inmate's right to present witnesses and relevant documentary evidence requires the court to balance the individual inmate's interest in avoiding loss of good conduct time against the institution's need to keep the hearing within reasonable limits and to limit witnesses that may create a risk of reprisal or undermine authority.   *Wolff*, 418 U.S. at 566.

Weighing competing interests in this case is nearly impossible.   Petitioner's vague grounds fail to explain the nature or source of the alleged videotape, assuming that it even exists.   To the extent that Petitioner refers to generalized video surveillance of a common area of his housing unit, for example, the Court could reasonably find it unduly burdensome to require prison personnel to screen many hours of video surveillance in the hope of spotting a shot of the common bulletin board sufficiently detailed to demonstrate that the Warden's memorandum was or was not posted there at a single point in time.

Further, nothing in the record even suggests that Petitioner ever sought such video or photographic evidence before bringing his habeas petition.   He declined to discuss the incident with the unit investigator and the unit disciplinary committee, stating that he would wait until the DHO hearing.   The DHO's report includes nothing tending to suggest that Petitioner ever requested the videotape or screen shot.   The evidence demonstrates that at the hearing, Petitioner presented his defense that the Warden's memo was never posted.   Although a staff witness testified that the Warden's memorandum was posted, Petitioner declined to present any witnesses, including one who might have testified that the memorandum never appeared on the bulletin board.

///

6

The Court finds Petitioner's vague and unsupported claim to lack credibility.  Broad, conclusive claims of unconstitutionality are insufficient to state a cognizable claim.  *Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995).  The Court declines to grant the petition on a single vague and unsupported ground.

## IV.    Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>        (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>        (B)  the final order in a proceeding under section 2255.
>
>    (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>    (3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

**IV.**     **Conclusion and Order**

The Court hereby ORDERS that:

1.      The petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3.      The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **June 26, 2015**                          /s/ *Barbara A. McAuliffe*
                                                      UNITED STATES MAGISTRATE JUDGE